JUDGE OETKEN

13 CV 6088

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                : CIVIL ACTION
                                           :
            Plaintiff,                     :
                                           :
    - against -                            : COMPLAINT
                                           :
VAMCO SHEET METALS, INC.,                  : JURY TRIAL DEMAND
                                           :
            Defendant.                     :
------------------------------------x

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Charging Parties Kesha Watkins, Melanie DeMicco, Anna Quitoriano, and Nilsa Lopez (collectively, "Charging Parties") and other female employees who were adversely affected by such practices. As alleged with greater particularity in Paragraphs 6 through 44 below, the Equal Employment Opportunity Commission charges that Defendant Vamco Sheet Metals, Inc. ("Defendant") discriminated against Charging Parties and other aggrieved female employees as to various terms, conditions, or privileges of their employment, and discharged them, because of their sex. Defendant's practices have been undertaken with the purpose and have had the effect of denying women equal employment opportunities because of their sex in violation of Title VII.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has been a New York corporation, has continuously been doing business in the State of New York and the City of New York, and continuously has had at least 15 employees.

5. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701 (b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than 30 days prior to the institution of this lawsuit, Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Defendant provides sheet metal fabrication and installation services to construction projects in the state of New York.

8. In July 2008 Defendant began preparatory work as subcontractor on a construction project at the John Jay College of Criminal Justice in New York City (the "John Jay

project"). The John Jay project launched in the summer of 2009 and continued until early April 2011, when the contractor terminated its contract with Defendant.

9. The John Jay project was in territory covered by Local 28 of the Sheet Metal Workers' International Union ("Local 28"), whereas Defendant typically operated in territory assigned to Local 38 of the Sheet Metal Workers' International Union ("Local 38"), making it an "out-of-town contractor." Pursuant to a prior Consent Decree and related Orders entered by this Court concerning Local 28, out-of-town contractors such as Defendant are permitted to employ no more than two members of the union from their home territory on a jobsite in Local 28's territory. The balance of their workforce must comprise only Local 28 members, who are assigned to such jobs by Local 28's referral hall.

10. Local 28's referral hall maintains a ranking list also known as an "out-of-work list." Those members who have been unemployed the longest are ranked at the top of the list, and those with shorter periods of unemployment are ranked lower. When a contractor contacts the hall to request workers, those highest on the out-of-work list are referred to the job, thereby moving the lower-ranked members up the list until it is their turn for a referral.

11. Under the Five Day Rule governing Local 28's referral hall at the time of the John Jay project, if a Local 28 member accepts a job but the job lasts five days or less, the member may return to the referral hall and have his or her name moved to its original position on the out-of-work list, rather than having it moved to the bottom of the list. The member may move his or her name to the original position on the list only once. Thus, a member terminated after working five days or less could return to his or her original position at the top of the list, but a member terminated after working any more than five days, or a member who was re-hired and

3

subsequently re-terminated (no matter how many days on the job), would go to the bottom of the list.

12. During the timeframe covered by the John Jay project, there were hundreds of workers on the out-of-work list. Consequently, it would take approximately one year for a worker who had been sent to the bottom of the list to make his or her way back up to the top of the list and be eligible for a new referral.

13. Beginning in June 2009 and continuing throughout the duration of the John Jay project, Defendant engaged in unlawful employment practices against female employees because of their sex in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

14. Defendant employed seven female Local 28 members during the John Jay project. Due to Defendant's discriminatory practices, all but one of them worked for shorter tenures than male co-workers hired in or around the same time that the female workers were hired.

15. Construction jobs funded by the Dormitory Authority of the State of New York are required to employ women in a minimum of 6.9% of the total construction work hours. Defendant's work on the John Jay project was such a construction job subject to the 6.9% requirement.

## Kesha Watkins

16. Charging Party Kesha Watkins has been a sheet metal worker since 1999, giving her over a decade of experience when she worked at the John Jay project.

17. On June 15, 2009, Defendant requested a sheet metal worker from the referral hall. Local 28 referred Watkins, and she started work at the John Jay project on June 16, 2009.

18. Defendant discharged Watkins at the end of the day on June 22, 2009—i.e., after she had completed her fifth day of work on the job but before she started her sixth day of work.

19. When Watkins returned to the referral hall after her termination, the referral hall returned her to her original position on the out-of-work list. On July 27, 2009, when Defendant requested a worker from the out-of-work list, the referral hall referred the next worker on the list, which was Watkins. On July 28, 2009, Defendant employed Watkins on the John Jay project for the second time.

20. On August 3, 2009, after she completed her fifth day of work but before she began her sixth day, Defendant's supervisor discharged Watkins with the mistaken understanding that terminating her after her fifth day would necessarily send her to the bottom of the out-of-work list, thus preventing her from returning to the John Jay project, or any project, for about a year.

21. In response to the termination, the equal-opportunity monitor intervened on Watkins' behalf. Ultimately, Defendant rescinded the layoff. On August 5, 2009, Defendant employed Watkins on the John Jay project for a third time.

22. Approximately two weeks after Watkins started on the John Jay project for the third time, Defendant discovered that neither she nor a male co-worker had a particular certification required by the Occupational Safety and Health Administration ("OSHA"), known as an OSHA-10 certification. On August 18, 2009, Defendant laid off both Watkins and the male co-worker and informed them that they could return to the job once they each obtained the OSHA-10 certification. Although the male co-worker had a record of performance problems, on August 31, 2009, after the male co-worker received his OSHA-10 certification, Defendant put him back to work on the John Jay project. Watkins obtained her OSHA-10 certification within days of her layoff, and on August 20, 2009, provided proof of her certification to Defendant, but Defendant refused to reinstate her.

23. While Watkins was on the John Jay project, Defendant discriminated against her in regard to the terms, conditions, or privileges of her employment. For example, with regard to the OSHA-10 certification discussed above, Defendant offered the male co-worker, but not Watkins, the use of a computer to complete the on-line OSHA-10 certification course. As another example, Defendant primarily assigned Watkins, an experienced sheet metal worker, menial tasks such as unloading trucks and fetching coffee that it did not regularly assign to her male co-workers.

24. At all times, Watkins performed her duties satisfactorily and Defendant did not lodge any performance-related complaints about her with Local 28.

### Melanie DeMicco

25. Charging Party Melanie DeMicco has been a sheet metal worker since 1987, giving her over two decades of experience when she worked at the John Jay project.

26. On March 26, 2010, Defendant requested a sheet metal worker from the referral hall. Local 28 referred DeMicco, and she started work at the John Jay project on March 29, 2010.

27. While DeMicco was on the John Jay project, Defendant discriminated against her in the terms, conditions, or privileges of her employment. For example, Defendant refused to provide DeMicco, a new mother, with an appropriate private location where she could express breast milk or appropriate breaks so that she could do so. Consequently, DeMicco was forced to express breast milk in bathroom stalls and public locations far from her worksite, including in the basement. These difficulties prompted her to stop breastfeeding her baby earlier than she had planned. Defendant provided male workers with close, easily-accessible restroom facilities. Defendant also issued DeMicco a disciplinary write-up for failing to wear a required safety

harness, even though DeMicco never had received training in how to use it.  Defendant refrained from firing DeMicco for this infraction only due to the intervention of a representative of the John Jay project's general contractor.

28.     On August 31, 2010, Defendant laid off DeMicco without explanation.  In September 2010, after DeMicco's discharge, Defendant hired approximately 10 male workers on the John Jay project.

29.     At all times, DeMicco performed her duties satisfactorily and Defendant did not lodge any performance-related complaints about her with Local 28.

### Anna Quitoriano

30.     Charging Party Anna Quitoriano has been a sheet metal worker since 1986, giving her over two decades of experience when she worked at the John Jay project.

31.     On March 26, 2010, Defendant requested a sheet metal worker from the referral hall.  Local 28 referred Quitoriano, and she started work at the John Jay project on March 29, 2010.

32.     Defendant discriminated against Quitoriano in the terms, conditions, or privileges of her employment.  For example, Defendant monitored the time that Quitoriano took in going to the women's restroom, which was located twelve floors below her work area.  Defendant provided male workers with close, easily-accessible restroom facilities.  Additionally, Defendant told her that she and other women workers were too slow, the women workers took too long to complete work, and the women were low-production, and Defendant called her and Charging Party Nilsa Lopez "old ladies" and "old hags."  Defendant did not subject male co-workers to similarly baseless or derogatory comments.

33. Defendant laid off Quitoriano on October 1, 2010, citing "lack of work" on the jobsite. The John Jay project continued for another six months, however, and Defendant continued to hire or reassigned male workers after discharging Quitoriano.

34. At all times, Quitoriano performed her duties satisfactorily and Defendant did not lodge any performance-related complaints about her with Local 28.

### Nilsa Lopez

35. Charging Party Nilsa Lopez had over two decades of experience as a sheet metal worker when she worked at the John Jay project.

36. On April 8, 2010, Defendant requested a sheet metal worker from the referral hall. Local 28 referred Lopez, and she started work at the John Jay project on April 12, 2010.

37. Defendant discriminated against Lopez in regard to the terms, conditions, or privileges of her employment. For example, Defendant assigned Lopez menial tasks that her male co-workers did not have to perform. On at least one occasion, Defendant also assigned Lopez the task of moving a heavy piece of equipment across the jobsite by herself, a task that typically required two workers in order to be performed safely. Defendant did not require male workers to perform similar tasks without assistance.

38. Defendant laid off Lopez on April 19, 2010, without explanation, after she had worked for six days.

39. Defendant's discharging Lopez after six days of work in April 2010 should have sent her to the bottom of the out-of-work list, thus ensuring that she would not be referred to the John Jay project, or any other job, until at least April 2011. But the equal-employment monitor and Local 28 decided to return Lopez to her prior rank on the out-of-work list. In late-April 2010, Defendant contacted Local 28's referral hall to request that a sheet metal worker be sent to

the John Jay project. When the referral hall informed Defendant that Lopez would be the member sent to the job because she was next on the out-of-work list, Defendant rescinded its request.

40. Lopez performed her duties satisfactorily and Defendant did not lodge any performance-related complaints about her with Local 28.

### Other Women

41. In addition to the four Charging Parties, Defendant discriminated against other female Local 28 members in a similar manner. For example, Defendant fired a fifth female Local 28 member after just one day of work, and a sixth after eight days.

### Additional Allegations

42. The effect of the practices complained of in Paragraphs 13 through 41 above has been to deprive Charging Parties and other female workers equal employment opportunities and otherwise adversely affect their status as employees because of sex.

43. The unlawful employment practices complained of in Paragraphs 13 through 42 above were intentional.

44. The unlawful employment practices complained of in Paragraphs 13 through 43 above were done with malice or with reckless indifference to the federally protected rights of Charging Parties and other female employees.

### **PRAYER FOR RELIEF**

Therefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in employment practices that discriminate on the basis of sex.

      B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female employees and that eradicate the effects of their past and present unlawful employment practices.

      C.      Order Defendant to make whole Charging Parties and other aggrieved female employees by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.      Order Defendant to make whole Charging Parties and other aggrieved female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

      F.      Order Defendant to make whole Charging Parties and other aggrieved female employees by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above including, but not limited to, emotional pain, suffering, humiliation, and inconvenience in amounts to be determined at trial.

      G.      Order Defendant to pay Charging Parties and other aggrieved female employees punitive damages for Defendant's malicious and reckless conduct described above in amounts to be determined at trial.

      H.      Grant such further relief as the Court deems necessary and proper in the public interest.

      I.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. David Lopez
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Y. Reams
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, N.E.
Washington D.C. 20507

_____
Elizabeth Grossman
Regional Attorney

_____
Nora E. Curtin
Supervisory Trial Attorney

_____
Thomas Lepak
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, N.Y. 10004
(212) 336-3690
(212) 336-3623 (Facsimile)
thomas.lepak@eeoc.gov