# ATTACHMENT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EQUAL EMPLOYMENT OPPORTUNITY :
COMMISSION,                              :          Civil Case No. 13 CV 6088
                                                       :
                        Plaintiff,       :
                                                       :
KEISHA WATKINS,                          :
ANNA QUITORIANO,                         :
NILSA LOPEZ, and                         :          COMPLAINT
MELANIE DEMICCO                          :
                        Plaintiffs-Intervenors, :
                                                       :
        - against -                      :          JURY TRIAL DEMAND
                                                       :
VAMCO SHEET METALS, INC.,                :
                                                       :
                        Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


        Plaintiff-Intervenors Kesha Watkins ("Ms. Watkins"), Anna Quitoriano ("Ms.

Quitoriano"), Nilsa Lopez ("Ms. Lopez"), and Melanie Demicco ("Ms. Demicco"), by and

through their undersigned attorneys, bring this Complaint against defendant Vamco Sheet Metal,

Inc. ("Vamco" or "Defendant"), and allege employment discrimination based on sex as follows:


## NATURE OF THE CLAIMS

        1.      This is a civil action for monetary damages and declaratory, injunctive,

and equitable relief, alleging discrimination on the basis of sex in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et seq. ("Title VII"), the New York

State Human Rights Law, New York State Executive Law §§ 290 et seq. (the "State HRL"), the

New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 et

seq. (the "City HRL"), Fair Labor Standards Act of 1938, as amended by the Patient Protection

and Affordable Care Act, 29 U.S.C. § 207 (r)(1) ("FLSA"), and New York State Labor Law, Art. 7 § 206-c ("Labor Law").

2. Defendant has subjected Plaintiffs-Intervenors to disparate terms and conditions of employment and discharged them because of their sex.

3. Defendant's conduct acted to deprive Plaintiff-Intervenors of their rights to equal employment opportunity under the law and has caused Plaintiff-Intervenors to suffer economic and non-economic damages, including emotional distress.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the Plaintiff-Intervenors' Title VII and FLSA claims under 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over the State HRL, City HRL and Labor Law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims. This Court also has personal jurisdiction over Defendants with respect to Plaintiffs-Intervenors' state HRL claims pursuant to CPLR §§ 301 and 302. With respect to Plaintiffs-Intervenors' city HRL claims, this Court has personal jurisdiction pursuant to § 8-101.

5. Plaintiff-Intervenors have exhausted their administrative remedies and complied with the statutory prerequisites of Title VII, State HRL, and City HRL by filing timely charges with the Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful actions described herein.

6. Venue is proper in this Court because the discriminatory employment practices alleged were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

7.     Plaintiff-Intervenor  Kesha Watkins is a woman, currently residing in Brooklyn, New York, and is a former employee of Defendant.

8.     Plaintiff-Intervenor Anna Quitoriano is a woman, currently residing in Staten Island, New York,  and is a former employee of Defendant.

9.     Plaintiff-Intervenor Nilsa Lopez is a woman currently residing in Gastonia, North Carolina, and is a former employee of Defendant.

10.     Plaintiff-Intervenor Melanie Demicco is a woman, currently residing in Rockaway, New Jersey, and is a former employee of Defendant.

11.     Defendant Vamco Sheet Metal, Inc. is a corporation doing business under the laws of the State of New York and maintains its principal place of business in Cold Spring, New York.

12.     Defendant worked as a subcontractor on a construction project at the John Jay College of Criminal Justice in New York City ("John Jay Project") during the period of approximately July 2008 to April 2011.

13.     At all relevant times, Defendant met the definition of "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

*All Plaintiffs-Intervenors*

14.     All Plaintiffs-Intervenors were employed by Defendant Vamco to work at the John Jay Project. The project lasted approximately three years, with the bulk of the work taking place between May 2009 and April 2011.

15.     Defendant's work at the John Jay Project was done subject to the work rules of the Local 28 of the Sheet Metal Workers' Union ("Local 28") and its workforce was comprised of mostly Local 28 members assigned via the Union referral hall.

16.     Defendant's work performed at the John Jay Project was subject to federal requirements that it employ 6.9% of the total construction work hours at this site to women, but it failed to comply.

17.     During the John Jay Project, Vamco employed only ten women in total. One such female was a "company woman" from Local 38 that Vamco employed regularly on the John Jay Project.  The remaining women were Local 28. By contrast, Vamco admitted to employing up to 200 men to work on the John Jay Project.

18.     In contrast to the employment tenure for male sheet metal workers from Local 28, Local 28 women were employed for short periods of time, none lasting more than 10 months. Only three women lasted five months or longer. The remaining six women were terminated within weeks or days.

19.     Defendant subjected Plaintiff-Intervenors to unlawful employment practices based on their sex during the time they worked at the John Jay site as described in their timely-filed EEOC charges.

20.     The EEOC investigated the four charges filed by the Plaintiff-Intervenors, and on or about September 21, 2012, issued a combined determination as to all four charges.

21.     In the determination, the EEOC found, *inter alia*, the following:

[B]ased on the conflicting information gathered from Respondent's position statement, subsequent responses, testimony of witnesses and the documentary information derived from Respondent's records, there is reason to believe that Charging Parties and a class of female sheet metal workers were subjected to discrimination based on sex (female).  Respondent subjected Charging Parties and a class of female sheet metal workers to disparate treatment in the terms and

4

conditions of their employment, unjustified negative evaluations as compared with male co-workers, and layoffs when male workers were retained, all in violation of Title VII.

### Plaintiff-Intervenor Kesha Watkins

22.    Ms. Watkins is a sheet metal worker with many years of experience at the journey-person level. She holds certificates of completion for numerous state-approved skills courses.

23.    Ms. Watkins was a member of Local 28 during all relevant times.

24.    Ms. Watkins, referred by Local 28, began working for Defendant on the John Jay Project starting on or about June 16, 2009.

25.    Ms. Watkins performed her duties competently on the John Jay Project. She was never reprimanded, disciplined, or otherwise given a negative performance appraisal.

26.    While Ms. Watkins was employed by Vamco, the deputy foreman, John Moser, would not acknowledge her presence.

27.    Foreman John Moser ("Moser") and Project Manager Paul Giomolo ("Giomolo") asked her to unload the truck, arrange ducts, and get coffee. Ms. Watkins – unlike her male peers - was continuously provided these apprentice-level tasks throughout her time with Vamco. On the few occasions when the union shop steward, Wayne Patterson ("Patterson"), attempted to assign Ms. Watkins to regular sheet metal assignments, Mr. Moser and Mr. Giolomo interfered and reassigned Ms. Watkins to unloading trucks.

28.    Despite the fact that she had no performance or attendance problems, Ms. Watkins was discharged within six days of her start date, on June 22, 2009. Defendant offered no explanation as to why she was being terminated.

29.     After the Local 28's equal opportunity monitor, Mr. Charlie Saunders ("Mr. Saunders"), intervened in the wake of Ms. Watkins's termination, Vamco agreed to allow Ms. Watkins to return to work. Ms. Watkins resumed her employment with Vamco on July 28, 2009.

30.     On August 3, 2009, days after her rehire, Ms. Watkins was again terminated without explanation. Shortly after terminating Ms. Watkins, Vamco hired a male employee to the project.

31.     Mr. Saunders asked Vamco for a reason why Ms. Watkins had been laid off again and was told by Giomolo that Ms. Watkins "had been too friendly." However, Giomolo stated to Patterson, in front of other employees, "I thought if I kept her for five days, she would have to go back to the bottom of the hiring list."

32.     When Local 28 intervened on her behalf again, Ms. Watkins was recalled to the jobsite on August 5, 2009.

33.     During this time, Vamco continued to employ a male, Peter McGee ("Mr. McGee"), who missed days of work without calling in advance to his supervisors.

34.     Ms. Watkins was laid off for the third and final time on August 18, 2009, after Defendant's manager, Mr. Ray Fox ("Mr. Fox"), communicated to her that she did not have a certification required by the Occupational Safety and Health Administration, the so-called OSHA-10 training certification. Mr. McKee, who also lacked this certification, was laid off along with Ms. Watkins. However, prior to terminating Mr. McKee, Mr. Giomolo made arrangements to ensure that Mr. McKee would enjoy access to the computer in Mr. Giomolo's personal on-site trailer where he could obtain his certification online. McGee was allowed to resume work soon thereafter.

6

35.     Unlike Mr. McKee, Ms. Watkins was forced to complete the OSHA-10 course online at home.  Fox informed Ms. Watkins that she would be allowed to return once she obtained her certification.

36.     On August 19, 2009, Ms. Watkins completed her OSHA certification and the next day, faxed the certificate of completion to Mr. Fox. She was told that she could return to work on August 26, 2009; however, on August 25, 2009, one day before the date of her anticipated return, Ms. Watkins received a call from the union's shop steward, Mr. Patterson, who explained that Vamco had decided not to reemploy her as the owner of Vamco did not approve of her being there.

37.     On September 22, 2009, less than 300 days from her discriminatory termination, Ms. Watkins filed a complaint with the EEOC. In that complaint, Ms. Watkins alleged that Vamco had discriminated against her on account of her sex in violation of Title VII.

### Plaintiff-Intervenor Anna Quitoriano

38.     Ms. Quitoriano is a very experienced sheet-metal worker having worked at the journey-level for more than two decades.  She holds certificates of completion for numerous state-approved skills courses.

39.     Ms Quitoriano has been an active member of Local 28 for twenty-eight years and has previously run for the office of the union's executive board member.

40.     On or about March 29, 2010, referred by Local 28, Ms. Quitoriano began working for Defendant on the John Jay Project.

41.     Ms. Quitoriano performed her duties competently on the John Jay Project. She was not reprimanded, disciplined, or otherwise given a negative performance appraisal.

42.     Despite her skill as a certified welder, she was mostly used to "cover duct" a job that was more appropriate for a laborer.  By contrast, her male peers performed this work very infrequently.

43.     At the site, she was denied proper equipment, including ladders, lifts, and other materials, increasing the difficulty of the job. For instance, when she was assigned to install ductwork, Defendant refused to provide her with a drawing prepared by a Local 28 sketcher even though she needed it in order to correctly complete the assignment.

44.     Additionally, Ms. Quitoriano was subjected to sexist and ageist comments. For example, on one occasion, the Project Manager stated, without evidence, that women were "low production" and "took too long to complete work."  On other occasions she and another female coworker were referred to as "old lady" and "old hag."

45.     Ms. Quitoriano was harassed by Defendant for the time she took for restroom breaks, yet the restroom facility provided for women was many floors below her work area.

46.     Ms. Quitoriano brought these issues to the attention of the foreman. The foreman did not respond to her complaints.

47.     Ms. Quitoriano was docked pay for taking a day off to attend her son's graduation, while a male employee who took half a day in a similar situation was paid for his time off.

48.     Ms. Quitoriano was laid off on October 1, 2010.  Defendant told plaintiff her layoff was due to a "lack of work" despite the fact that a lot of work still remained to be done on the project.  Vamco continued the job for months thereafter and continued to hire men at the site.

49.    After Ms. Quitoriano was laid off, on October 5 and 6, 2010, she discovered that Vamco continued to sign her name onto the certified payroll sheet.  Such fraudulent entries allowed Vamco to appear to employ more women than it actually did.

50.    On or about December 16, 2010, Ms. Quitoriano filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of her alleged discrimination alleging sex discrimination.

### Plaintiff-Intervenor Nilsa Lopez

51.    Ms. Lopez a sheet metal worker with many years experience at the journey person level.  She holds certificates of completion for numerous state-approved skills courses.

52.    Ms. Lopez is a more than 25 year member of Local 28 and was the first female to run for office in her union.

53.    Ms. Lopez, referred by her union, began work for Defendant at the John Jay Project on or about April 12, 2010.

54.    Ms. Lopez performed her duties competently on the John Jay Project.  She was not reprimanded, disciplined, or otherwise given a negative performance appraisal

55.    Defendant assigned Ms. Lopez to unload trucks on her first day. Ms. Lopez did not have difficulty performing her unloading duties.

56.    Ms. Lopez was next assigned to "squeeze and clip" connections on duct. She was the only person assigned to this task, which she performed in one of the machine rooms at the job site. This task is low-skill and is usually conducted by an apprentice.

57.     Ms. Lopez was never assigned additional responsibilities as the men were, but was ordered around as if an apprentice rather than an experienced sheet-metal worker, to do small, isolated, menial tasks.

58.     Soon thereafter, Giomolo selected Ms. Lopez from the group of men and instructed her to lift a 300 pound duct jack with broken wheels and move it across a long corridor. Ms. Lopez told Giomolo that this was a two person job, but he did not provide her a partner to assist her in carrying the broken jack. Giomolo stood by and watched Ms. Lopez carry the jack. She had to put it down and lift it up again approximately eight times over in order to make it to the other side of the corridor. Because this was clearly an act of harassment of Ms. Lopez, two nearby carpenters told Giomolo, "You are a scumbag." Giomolo's response was, "She is in construction so she should be able to do this."

59.     The women's bathroom at the job site was on the 4th floor, which is far from Ms. Lopez's work site. Ms. Lopez's supervisors expressed hostility toward her bathroom visits. For example, after returning from the bathroom, Ms. Lopez found Giolomo near her worksite, and he asked Ms. Lopez where she had been and looked at his watch.

60.     Ms. Lopez was terminated on or about April 19, 2010, just six business days after her employment commenced. When she asked why she had been laid off, her Foreman responded that he did not know. A shop steward, told her that "they *wanted* to give you the layoff check last week."

61.     Less than 2 weeks later, Vamco called the union hiring hall for a sheet metal worker referral. The hiring hall provided Ms. Lopez's name.  After the hall provided her name, Vamco then called back and canceled the order for more help. This cancellation was in direct response to the hall's referral for her, a woman.

62.     On December 15, 2010, Ms. Lopez filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of her alleged discrimination.

**_Plaintiff-Intervenor Melanie DeMicco_**

63.     Ms. DeMicco started working as a laborer when she was around 23 years old.

64.     She soon progressed to sheet metal work and has been a certified welder with many years experience at the journey-person level.  She holds certificates of completion for numerous state-approved skills courses.

65.     She soon progressed to sheet metal work and has been a certified welder with many years experience at the journey-person level.  She holds certificates of completion for numerous state-approved skills

66.     Ms. DeMicco was a member of Local 28 during all relevant times.

67.     Ms. DeMicco, referred by Local 28, began working for Defendant on the John Jay Project starting on or about March 29, 2010.

68.     Ms. DeMicco performed her duties extremely well on the John Jay Project, despite being routinely denied specific equipment and tools she requested to do her work and despite the safety violations that were commonplace.

69.     Ms. DeMicco was subjected to hostile treatment by management and unjustified and increased scrutiny while she performed her work that similarly situated men were not subjected to.

70.     She frequently heard unjustified derogatory comments made about her female co-worker Anna Quitoriano such as "Does she know what the fuck she is doing?" and

11

heard her referred to as an "old hag." She did not hear similar statements made about her male peers.

71.    Despite her skill as a certified welder, she was mostly used to "cover duct" a job that was more appropriate for a laborer.  By contrast, her male peers performed this work very infrequently.

72.    When she began working for Vamco, Ms. DeMicco was a nursing mother for her then-eleven-weeks-old son. On April 1, 2010, she communicated this fact to her supervisor, Mr. Fox. Mr. Fox responded: "Too much information!"

73.    Despite her requests to find an appropriate place to express milk, she was not offered any assistance by Vamco. Instead, she was allotted only 10 minutes during the morning apart from her 30-minute lunch break to express milk and harassed for taking these breaks.

74.    Because Vamco did not provide her with a designated space to express milk, Ms. DeMicco was forced to find improvised locations for pumping. These improvised locations included a closet, a make-shift bathroom, and an air conditioning unit.

75.    For instance, on April 12, 2010, Ms. DeMicco had to pump in a small dark room with no door on it while her partner stood guard outside to ensure that no one came by. Similarly, on May 13, 2010, Ms. DeMicco had to pump in an air handler while Mr. Moser stood guard for her. Due to the stress and difficulties occasioned by this hostility and lack of accommodation, Ms. DeMicco was eventually forced to stop breastfeeding her child earlier than she had originally planned.

76.     Despite having no record of attendance or disciplinary problems, Ms. DeMicco was laid off on August 31, 2010. In September, Vamco hired several new male employees for its John Jay College project worksite.

77.     On January 4, 2011, within 300 days of her discriminatory termination, Ms. DeMicco filed a complaint with the EEOC. In her complaint, Ms. DeMicco listed that she had been discriminated against on account of her sex and her status as a nursing employee.

## COLLECTIVE COUNTS

### COUNT I

### TITLE VII

78.     Plaintiffs-Intervenors re-allege and incorporate by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

79.     This Count is brought on behalf of all Plaintiffs-Intervenors.

80.     Defendant has discriminated against Plaintiffs-Intervenors by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory terms, conditions and privileges of employment and discriminatory terminations because of sex.

81.     Defendant's conduct has been intentional and in violation of Title VII.

82.     Defendant's conduct has been deliberate, willful, malicious, and/or conducted in reckless disregard of Plaintiffs-Intervenors' rights.

83.     As a result of Defendant's conduct alleged in this Complaint, Plaintiffs-Intervenors have suffered, *inter alia*, humiliation, embarrassment, emotional distress, mental anguish, stress, anxiety, inconvenience and loss of self-esteem, self confidence and personal

13

dignity. Plaintiffs-Intervenors are entitled to recover damages for such injuries from Defendant under Title VII.

84.     As a further result of Defendant's unlawful conduct, Plaintiffs-Intervenors have suffered harm including but not limited to: lost wages, lost benefits, and lost interest. Plaintiffs-Intervenors are entitled to recover such compensatory and non-compensatory damages, punitive damages, and attorneys' fees and costs from Defendant under Title VII.

## COUNT II

## NEW YORK STATE HUMAN RIGHTS LAW (DISCRIMINATION)

85.     Plaintiffs-Intervenors re-allege and incorporate by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

86.     This Count is brought on behalf of all Plaintiffs-Intervenors.

87.     Defendant has discriminated against Plaintiffs-Intervenors by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory terms, conditions and privileges of employment and discriminatory terminations because of sex.

88.     Defendant's conduct has been intentional and in violation of the State HRL.

89.     As a result of Defendant's conduct alleged in this Complaint, Plaintiffs-Intervenors have suffered, *inter alia*, humiliation, embarrassment, emotional distress, mental anguish, stress, anxiety, inconvenience and loss of self-esteem, self confidence and personal dignity. Plaintiffs-Intervenors are entitled to recover damages for such injuries from Defendant under the State HRL. Plaintiffs-Intervenors have suffered harm, including but not limited to: lost

wages, lost benefits, and lost interest. Plaintiffs-Intervenors are entitled to recover such monetary and other damages from Defendant under the State HRL.

90.     As a further result of Defendant's unlawful conduct, Plaintiffs-Intervenors have suffered harm including but not limited to: lost wages, lost benefits, and lost interest. Plaintiffs-Intervenors are entitled to recover such monetary and other damages from Defendant under the State HRL.

## COUNT III

## NEW YORK CITY HUMAN RIGHTS LAW (DISCRIMINATION)

91.     Plaintiffs-Intervenors re-allege and incorporate by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

92.     This Count is brought on behalf of all Plaintiffs-Intervenors.

93.     Defendant has discriminated against Plaintiffs-Intervenors by treating them differently from and less preferably than similarly situated male employees and by subjecting them to discriminatory terms, conditions and privileges of employment and discriminatory terminations because of sex.

94.     Defendant's conduct has been intentional and in violation of the City HRL.

95.     Defendant's conduct has been deliberate, willful, malicious, and/or conducted in reckless disregard of Plaintiffs-Intervenors' rights.

96.     As a result of Defendant's conduct alleged in this Complaint, Plaintiffs-Intervenors have suffered, *inter alia*, humiliation, embarrassment, emotional distress, mental anguish, stress, anxiety, inconvenience and loss of self-esteem, self confidence and personal

15

dignity. Plaintiffs-Intervenors are entitled to recover damages for such injuries from Defendant under the City HRL.

97.     As a further result of Defendant's unlawful conduct, Plaintiffs-Intervenors have suffered harm including but not limited to: lost wages, lost benefits, and lost interest. Plaintiffs-Intervenors are entitled to recover such compensatory and non-compensatory damages, punitive damages, and attorneys' fees and costs from Defendant under the City HRL.

## INDIVIDUAL COUNTS

## MS. DEMICCO

## COUNT I

## FAIR LABOR STANDARDS ACT (ACCOMMODATION FOR NURSING MOTHERS)

98.     Plaintiff-Intervenor Ms. DeMicco re-alleges and incorporates by reference each and every allegation in paragraphs 72-75 as if fully set forth herein.

99.     This Count is brought on behalf of Plaintiff-Intervenor Ms. DeMicco alone.

100.    Defendant has violated § 7 (r)(1) of FLSA by: (a) refusing to provide Ms. DeMicco with reasonable break time to express breast milk; and, (b) failing to make reasonable efforts to provide her with a room or other location in close proximity to the work area to express breast milk.

101.    Defendant's conduct has been intentional and in violation of Labor Law.

102.    As a result of Defendant's unlawful conduct, Ms. DeMicco has suffered and continues to suffer , *inter alia*, humiliation, embarrassment, emotional distress, mental anguish, stress, anxiety, inconvenience and loss of self-esteem, self confidence and personal dignity.

103.    By reason of the discrimination Ms. DeMicco endured, she is entitled to all legal and equitable relief available under FLSA.

## COUNT II

## NEW YORK STATE LABOR LAW (ACCOMMODATION FOR NURSING MOTHERS)

104.    Plaintiff-Intervenor Ms. DeMicco re-alleges and incorporates by reference each and every allegation in each and every preceding paragraph as if fully set forth herein.

105.    This Count is brought on behalf of Plaintff-Intervenor Ms. DeMicco alone.

106.    Defendant has violated § 206-c of Labor Law by: (a) refusing to provide Ms. DeMicco with reasonable break time to express breast milk; and, (b) failing to make reasonable efforts to provide her with a room or other location in close proximity to the work area to express breast milk.

107.    Defendant's conduct been intentional and in violation of the Labor Law.

108.    As a result of Defendant's unlawful conduct, Ms. DeMicco has suffered and continues to suffer , *inter alia*, humiliation, embarrassment, emotional distress, mental anguish, stress, anxiety, inconvenience and loss of self-esteem, self confidence and personal dignity.

109.    By reason of the discrimination Ms. DeMicco endured, she is entitled to all legal and equitable relief available under the Labor Law.

## vi. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs-Intervenors pray that this Court enter judgment in their favor and against Defendant, and grant the following relief:

110.    A declaratory judgment that Defendant's employment practices, actions and conduct challenged herein are illegal and in violation of the Title VII, State HRL, City HRL, FLSA and Labor Law;

111.    A permanent injunction restraining Defendant and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in such unlawful conduct;

112.    Such injunctive relief as will prevent Defendant from continuing its discriminatory practices, protect other similarly situated female employees, and direct Defendant to take affirmative action necessary to ensure that the effects of its past unlawful discriminatory practices are eliminated;

113.    An order ensuring that this Court retains jurisdiction of this action until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law;

114.    An award of damages in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiffs-Intervenors for all monetary and/or economic damages, including but not limited to, back pay, front pay, wages, lost benefits, seniority and other benefits of employment;

115.    An award of nominal and compensatory damages in an amount to be determined at trial, plus pre-judgment and post-judgment interest, to compensate Plaintiffs-Intervenors for all non-monetary damages, including but not limited to, compensation for the mental anguish and emotional distress, humiliation, embarrassment, stress, anxiety, and loss of self-esteem, self-confidence and personal dignity, and any other physical and mental injuries;

116.    An award of punitive damages in an amount to be determined at trial;

117.   An award of costs that Plainiffs-Intervenors have incurred in this action, as well as Plaintiffs-Intervenors' reasonable attorneys' fees to the fullest extent permitted by law; and,

118.   Such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs-Intervenors  hereby demands a trial by jury on all issues of facts and damages stated herein.

Dated: December 19, 2013
New York, NY

Respectfully submitted,

Legal Momentum

By:

Michelle A. Caiola (MC2110)
Acting Litigation Director

New address as of 01/01/2014
5 Hanover Square, Ste. 1502
New York, NY 10004
T: 212-413-7534
mcaiola@legalmomentum.org

Attorney for Plaintiffs-Intervenors