UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
EQUAL EMPLOYMENT OPPORTUNITY      : 13 Civ. 6088 (JPO) (JCF)
COMMISSION,                       :
                                  :                REPORT AND
                  Plaintiff,      :                RECOMMENDATION
                                  :
       - against -                :
                                  :
VAMCO SHEET METALS, INC.,         :
                                  :
                  Defendant.      :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE J. PAUL OETKEN, U.S.D.J.:

On August 29, 2013, the Equal Employment Opportunity
Commission ("EEOC") brought suit against Vamco Sheet Metals, Inc.
("Vamco"), alleging unlawful employment discrimination based on sex
in violation of Title VII of the Civil Rights Act of 1964 and Title
I of the Civil Rights Act of 1991.  Plaintiff-Intervenors Kesha
Watkins, Anna Quitoriano, Nilsa Lopez, and Melanie DeMicco now
request leave to intervene, bringing claims under Title VII, the
New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"), and the
New York City Human Rights Law, Administration Code of the City of
New York §§ 8-101 et seq. ("NYCHRL").  Ms. DeMicco also brings
claims pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C.
§ 207(r)(1) ("FLSA"), and New York State Labor Law, Art. 7 § 206-c
("NYLL").  For the reasons that follow, the motion should be
granted in part and denied in part.

Background

       The defendant is a New York corporation that provides sheet

metal fabrication and installation services on construction projects. (Complaint ("Compl."), ¶¶ 4, 7). Between July 2008 and April 2011, the defendant subcontracted for a construction project at the John Jay College of Criminal Justice in New York City. (Compl., ¶ 8). Due to the location of the project, Vamco was required to hire employees from Local 28 of the Sheet Metal Workers' International Union ("Local 28"). (Compl., ¶ 9). The project was also subject to federal requirements mandating that 6.9 percent of the total construction work hours be performed by women. (Compl., ¶ 15; Proposed Complaint ("Prop. Compl."), ¶ 16).

Despite this requirement, Vamco employed seven to ten women for the duration of the project (Compl., ¶ 14; Prop. Compl., ¶ 17), as compared to almost 200 men. (Prop. Compl., ¶ 17). The EEOC and the plaintiff-intervenors also allege that male Vamco employees enjoyed longer tenure than female employees, in part through deliberate manipulation of the Local 28 referral system. (Compl., ¶¶ 14, 20-21, 39; Prop. Compl., ¶ 18). Local 28 fills employment requests by maintaining a list ranking its members by employment status; those who have been unemployed the longest are put at the top of the list and referred first in response to employment requests. (Compl., ¶ 10). The first time a member accepts a job that lasts five days or less, his or her name returns to its original position on the list, rather than being placed at the

2

bottom.  (Compl., ¶ 11). During the John Jay project, the list contained hundreds of names, with a waiting period of approximately one year for those on the bottom of the list.  (Compl., ¶ 12).  At least twice, Vamco dismissed female employees and then requested new referrals from Local 28 in an attempt to circumvent the referral system.  (Compl. ¶¶ 20-21, 38-39).

Four women who were terminated by Vamco filed charges of unlawful gender discrimination with the EEOC.  (Compl., ¶ 6). After the EEOC conducted an investigation into their claims, it issued a combined determination finding that Vamco subjected those four female employees and a class of female sheet metal workers to "disparate treatment in the terms and conditions of their employment, unjustified negative evaluations as compared with male co-workers, and layoffs when male workers were retained" in violation of Title VII. (Prop. Compl., ¶ 21).  The EEOC filed suit against Vamco on August 29, 2013.  The plaintiff-intervenors -- the four women on whose behalf the EEOC filed suit -- now seek to intervene and bring additional charges against Vamco.

    A. <u>Proposed Complaint</u>

Although the underlying allegations differ in that they describe each plaintiff-intervenor's individual experience with Vamco, there are common threads to the claims.  All four women allege that they were experienced metal workers who were assigned

3

low level work, in contrast to their male co-workers. (Prop. Compl., ¶¶ 22, 27, 38, 42, 51, 56, 57, 64, 71). They did not receive the same treatment as their male co-workers with performance or attendance problems (Prop. Compl., ¶¶ 33, 34, 47), and were often subjected to hostile treatment by management (Prop. Compl., ¶¶ 26, 44, 46, 58, 69, 70). Two of the plaintiff-intervenors -- Ms. Quitoriano and Ms. Lopez -- were called "old ladies" and "old hags" and told that women were "low-production." (Compl., ¶ 32; Prop. Compl., ¶¶ 44, 70). After terminating three of the plaintiff-intervenors, either for lack of work or without providing an explanation, Vamco continued to hire male employees. (Prop. Compl., ¶¶ 30, 48, 76). Only three women hired from Local 28 were employed for longer than five months, while the majority were terminated "within weeks or days." (Prop. Compl., ¶ 18).

One intervenor-plaintiff, Melanie DeMicco, was breastfeeding her eleven-week-old son at the time she was hired by Vamco. (Prop. Compl., ¶ 72). In addition to bringing claims of unlawful gender discrimination under Title VII, Ms. DeMicco alleges that Vamco violated § 207(r) of the FLSA and its New York analog, NYLL 206-c, by failing to provide her with reasonable breaks and locations to express breast milk. (Prop. Compl., ¶¶ 100, 106). Vamco allowed Ms. DeMicco a ten minute morning break to pump milk, in addition to her lunch break. (Prop. Compl., ¶ 73). However, Ms. DeMicco

contends she experienced harassment for taking these breaks. (Prop. Compl., ¶ 73).   And, although she requested an appropriate location to express milk, Vamco did not provide her with a designated area.   (Prop. Compl., ¶ 73-74).   As a result, she expressed milk in "improvised locations" that required a co-worker to act as look-out, including a closet, a make-shift bathroom, and an air conditioning unit.   (Prop. Compl., ¶ 74-75).   Ms. DeMicco alleges that this situation was so stressful that she stopped breastfeeding her child earlier than she had planned and continues to suffer emotional distress.   (Prop. Compl., ¶¶ 75, 102)

Discussion

A. <u>Intervention</u>

Rule 24(a) of the Federal Rules of Civil Procedure provides that "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by federal statute."   Fed. R. Civ. P. 24(a)(1).   In considering a motion to intervene, the court "must accept as true non-conclusory allegations of the motion."   <u>United Parcel Services of America, Inc. v. Net, Inc.</u>, 225 F.R.D. 416, 421 (E.D.N.Y. 2005).

Title VII grants the right to intervene to any individual whose initial EEOC complaint triggers an EEOC enforcement action. 42 U.S.C. § 2000e-5(f)(1); <u>EEOC v. Mavis Discount Tire</u>, No. 12 Civ. 0741, 2013 WL 5434155, at *3 (S.D.N.Y. Sept. 30, 2013).   The

defendant does not contest the plaintiff-intervenors' right to intervene and assert Title VII claims or to bring associated claims under NYHRL. (Memorandum of Law in Partial Opposition to Motion to Intervene ("Def. Memo.") at 3). As outlined above, the plaintiff-intervenors all filed charges with the EEOC related to their employment with Vamco, and were issued a joint determination before the EEOC filed suit on their behalf. Further, the intervention is timely. The plaintiff-intervenors filed their motion four months after the complaint was filed, less than two weeks after the defendant filed an amended answer, and before the start of discovery. See Mavis Discount Tire, 2013 WL 5434155, at *4; EEOC v. Merrill Lynch & Co., Inc., No. 07 Civ 6017, 2007 WL 2846361, at *1 (S.D.N.Y. Sept. 26, 2007) (finding intervention timely where motion was filed two months after complaint). Accordingly, the plaintiff-intervenors' motion to intervene should be granted as to their Title VII and NYHRL claims.

B. Supplemental Jurisdiction

Vamco argues, nonetheless, that the Court should decline to exercise supplemental jurisdiction over the plaintiff-intervenors' City law claims. When a court has original jurisdiction under 28 U.S.C. § 1367, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

6

controversy under Article III of the United States Constitution."

28 U.S.C. § 1367(a).   Claims are part of the same case or

controversy when they arise out of a "common nucleus of operative

fact." Briarpatch Ltd., v. Phoenix Pictures, Inc., 373 F.3d 296,

308 (2d Cir. 2004) (internal quotation marks omitted); Treglia v.

Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (exercise of

supplemental jurisdiction proper where state and federal claims

derive from "approximately the same set of events"). "Typically,

supplemental jurisdiction is appropriate for claims during the

employment relationship because those claims arise from the same

underlying factual basis." Rivera v. Ndola Pharmacy Corp., 497 F.

Supp. 2d 381, 393 (E.D.N.Y. 2007).

Once the court has found a common nucleus, it may only decline

supplemental jurisdiction over related claims if:

> (1)the claim raises a novel or complex issue of State
> law, (2) the claim substantially predominates over the
> claim or claims over which the district court has
> original jurisdiction, (3) the district court has
> dismissed all claims over which it has original
> jurisdiction, or (4) in exceptional circumstances, there
> are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); see also Shahriar v. Smith & Wollensky

Restaurant Group, Inc., 659 F.3d 234, 245 (2d Cir. 2011); Vincent

v. Money Store, No. 03 Civ. 2876, 2011 WL 5977812, at *2 (S.D.N.Y.

Nov. 29, 2011).

Simply identifying an applicable exception does not require a

court to decline jurisdiction, however. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (noting that § 1367(c) is "permissive rather than mandatory"); see also Rivera, 497 F. Supp. 2d at 393 (describing exercise of supplemental jurisdiction as "the preferred course of action unless there is a compelling reason not to"). If an exception under § 1367 applies, the court then considers whether retaining or declining jurisdiction over the supplemental claim best satisfies the principles of "'economy, convenience, fairness, and comity.'" Metro Foundation Contractors, Inc. v. Arch Insurance Co., 498 F. App'x 98, 103 (2d Cir. 2012) (quoting Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998)); see also Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 613 F. Supp. 2d 437, 442 (S.D.N.Y. 2009). Exercising supplemental jurisdiction over discrimination claims in particular, "while not automatic, is a favored and normal course of action." Promisel v. First American Artificial Flowers, 943 F.2d 251, 254 (2d Cir. 1991); see also Rivera, 497 F. Supp. 2d at 387. Whether supplemental jurisdiction should be exercised remains an open question that may be raised at any stage in the litigation. See Itar-Tass Russian News Agency, 140 F.3d at 445; Chenensky v. New York Life Insurance Co., 942 F. Supp. 2d 388, 391 (S.D.N.Y.

2013).

1. <u>NYCHRL Claims</u>

While it is well-established in the Second Circuit that claims brought under NYHRL are "analytically identical" to claims brought under Title VII, <u>Mavis Discount Tire</u>, 2013 WL 5434155, at \*5 (internal quotation marks omitted), the same is not true for NYCHRL claims. <u>Mihalik v. Credit Agricole Cheuvreux North America, Inc.</u>, 715 F.3d 102, 108-09 (2d Cir. 2013) (noting that courts "must analyze NYCHRL claims separately and independently from any federal and state law claims"). NYCHRL creates a lower threshold for actionable conduct and must be construed broadly in favor of discrimination plaintiffs, creating a situation where a defendant might be liable under NYCHRL but not under state or federal statutes. <u>Id.</u> at 109-13; <u>see also</u> <u>Anderson v. Davis Polk & Wardwell</u>, 850 F. Supp. 2d 392, 403-404 (S.D.N.Y. 2012). This does not, however, invariably prohibit such claims from being tried concurrently. <u>See, e.g.</u>, <u>EEOC v. Bloomberg LP</u>, __ F. Supp. 2d __, __, 2013 WL 4799161, at \*3-10 (S.D.N.Y. 2013) (evaluating Title VII, NYHRL, and NYCHRL claims related to employment discrimination); <u>Sampson v. City of New York</u>, No. 07 Civ. 2836, 2009 WL 3364218, at \*7 (S.D.N.Y. Oct. 19, 2009) (finding supplemental jurisdiction appropriate where plaintiff's state and local claims derived from same operative facts as federal claims);

9

International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp. 2d 345, 357-58 (S.D.N.Y. 2007) (retaining jurisdiction over state and local law claims to "avoid the potential for duplicative litigation over the same conduct"); but see EEOC v. Rekrem, Inc., 199 F.R.D. 526, 529 (S.D.N.Y. 2001) (declining to exercise supplemental jurisdiction over state and city human rights law claims where claims would "unduly complicate the proceedings and focus the trial away from the parties' Title VII claims").

The claims the Plaintiff-Intervenors seek to assert under NYCHRL arise out of the same conduct as their Title VII and NYHRL claims. Vamco argues, nonetheless, that requiring a jury to evaluate the same conduct under two different legal standards presents too difficult a task for the jurors. (Def. Memo. at 4-5). Courts may decline supplemental jurisdiction where "the likelihood of jury confusion in treating divergent legal theories of relief [] would justify separating state and federal claims for trial." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); see also SST Global Technology, LLC v. Chapman, 270 F. Supp. 2d 444, 459 (S.D.N.Y. 2003). However, "[w]hile there are different proof issues in these [federal and state discrimination] claims, this result occurs in virtually all civil rights cases and cannot alone be the basis upon which to deny pendent jurisdiction."

<u>Williams v. Chase Manhattan Bank, N.A.</u>, 728 F. Supp. 1004, 1010 (S.D.N.Y. 1990).  There are a variety of tools available to limit potential jury confusion, including jury instructions and special verdict forms.  See <u>Klein v. London Star Ltd.</u>, 26 F. Supp. 2d 689, 694 (S.D.N.Y. 1998) (noting jury confusion "may be abated by proper jury instructions and special verdict forms").  Given these tools, I can see "no reason why competent counsel . . . will lack the ability to present the issues to the jury cogently and understandably, or why federal jurors will not be able to understand the issues that will be presented to them."  <u>Ansoumana v. Gristede's Operating Corp.</u>, 201 F.R.D. 81, 95 (S.D.N.Y. 2001). Therefore, I recommend that the plaintiff-intervenors be allowed to bring claims under NYCHRL.

  C. <u>Individual Claims Related to Breastfeeding</u>

    1. <u>Title VII Claim</u>

  Title VII encompasses the Pregnancy Discrimination Act of 1978, enacted by Congress to ensure that Title VII sex discrimination claims include discrimination based on pregnancy, child birth, or related medical conditions.  42 U.S.C. § 2000e-(k). Vamco points to a previous case in this district that dismissed a Title VII claim brought by a breastfeeding mother alleging "sex-plus" discrimination.  <u>Martinez v. NBC, Inc.</u>, 49 F. Supp. 2d 305, 308–10 (S.D.N.Y. 1999).  Sex-plus discrimination occurs when one

gender experiences disparate treatment when considered in conjunction with a secondary characteristic shared by both genders. The court in that case found that because men cannot lactate, there is no shared "plus" characteristic. Id. ("The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII."). Vamco claims that this forecloses any Title VII claim based on Ms. DeMicco's breastfeeding. (Def. Memo. at 11).

However, a recent Fifth Circuit case expressly held that adverse employment action against a female employee because she was expressing milk violates Title VII. EEOC v. Houston Funding II, Ltd., 717 F.3d 425, 428-30 (5th Cir. 2013); see also Falk v. City of Glendale, No. 12 Civ. 925, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (theorizing that Title VII could support lactation-related claims "if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping"). In particular, the Fifth Circuit held that "lactation is a related medical condition of pregnancy for purposes of the PDA," based on the plain meaning of the statute's text. Id. The Fifth Circuit distinguished Martinez as holding that pregnancy and related medical conditions are not "disabilities" that require accommodation for purposes of the Americans with Disabilities Act,

and failing to address whether lactation is a medical condition protected under the PDA.  717 F.3d at 429 n.6.  Where a plaintiff's claim focuses on adverse employment actions or conditions relating to her lactation breaks, as opposed to an alleged failure to accommodate a disability, an employer may be liable under Title VII.[1]  Id.

In the Proposed Complaint, Ms. DeMicco alleges that she was harassed for taking lactation breaks and eventually terminated.  (Prop. Compl., ¶ 73).  Therefore, it appears that Ms. DeMicco may be able to state a claim for disparate treatment under Title VII based on discrimination in connection with her attempts to continue breastfeeding her infant.

2. Private Right of Action under the FLSA and NYLL

i. Section 207(r) of the FLSA

As amended by the Patient Protection and Affordable Care Act, the FLSA now requires employers to provide breaks for nursing

---

[1] The Department of Labor ("DOL") also endorses the idea that a Title VII claim may be premised on discrimination related to breastfeeding.  See Reasonable Break Time for Nursing Mother, 75 Fed. Reg. 80073, 80078 (Dec. 21, 2010) ("If an employer treats employees who take breaks to express breast milk differently than employees who take breaks for other personal reasons, the nursing employee may have a claim for disparate treatment under Title VII.").  While the DOL is not the agency charged with enforcing Title VII, its interpretation is nonetheless instructive, and conforms with the EEOC's interpretation.  See Houston Funding II, Ltd., 717 F.3d at 429.

13

mothers to express breast milk, for up to one year post-partum.
See 29 U.S.C. § 207(r)(1)(A).  Since March 23, 2010, all employers
have been required to offer eligible employees an appropriate
location, other than a bathroom, and reasonable time to pump breast
milk for their nursing infants.   29 U.S.C. § 207(r)(1).   Such
breaks need not be paid.   29 U.S.C. § 207(r)(2).   Employers who
violate § 207 are "liable to the employee or employees affected in
the amount of their unpaid minimum wages, or their unpaid overtime
compensation, as the case may be, and in an additional equal amount
as liquidated damages."  29 U.S.C. § 216(b).  New York has enacted
similar protections for nursing mothers, mandating up to three
years of lactation breaks.  NYLL § 206-c.

   The defendant asserts that Ms. DeMicco's FLSA and NYLL claims
fail because there is no private right of action under either law.
(Def. Memo. at 6-7, 8-10).  Vamco relies on a recent decision by a
district court in Iowa, Salz v. Casey's Marketing Co., No. 11 CV
3055, 2012 WL 2952998, at *3 (N.D. Iowa July 19, 2012), which
dismissed a plaintiff's claim asserting direct violation of §
207(r).   The plaintiff's claims of constructive discharge and
retaliatory action based on the same conduct were allowed to go
forward.   Id. at *4.  The court concluded that because § 207(r)
does not require employers to compensate employees for lactation
breaks and the enforcement provisions for § 207 are limited to

unpaid wages, see 29 U.S.C. 216(b), "there does not appear to be a manner of enforcing the express breast milk provisions." Id. at *3.  The court also relied on a notice issued by the DOL that "in most circumstances" there will not be any unpaid minimum wage and overtime compensation resulting from the failure to provide lactation breaks.  Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073, 80078.  The DOL noted that where an employer violated the requirements of § 207(r), the DOL "may seek injunctive relief in federal district court, and may obtain reinstatement and lost wages for the employee." Id.  The only other court to entertain a § 207(r) claim brought by an individual reached the merits and dismissed the claim without addressing whether a private cause of action existed.  Miller v. Roche Surety & Casualty Co., Inc., 502 F. App'x 891, 893 (11th Cir. 2012).

In any event, this issue need not be decided now.  Even if there were a private cause of action to enforce § 207(r), Ms. DeMicco does not allege any lost compensation resulting from Vamco's conduct. (Prop. Compl., ¶ 102).  Private litigants seeking relief for violations of the FLSA's wage and overtime provisions are limited to recovery of unpaid minimum wages, overtime compensation, and an equal amount in liquidated damages. 29 U.S.C. § 216(b); see also Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 68 (N.D.N.Y. 2008).  There are no such damages claimed here.  While

the FLSA's anti-retaliation provision does allow for injunctive relief, see 29 U.S.C. § 216(b), Ms. DeMicco does not seek to bring a retaliation claim related to Vamco's alleged failure to accommodate her breastfeeding needs.  (Prop. Compl., ¶¶ 98-102). I therefore recommend that Ms. DeMicco not be permitted to join an FLSA claim for violation of § 207(r).

ii. Section 206-c of the NYLL

The statutory text of the NYLL § 206-c is silent as to whether it creates a private right of action.  To determine whether such a right may  nonetheless be "fairly implied" in the statute and its legislative history, New York courts consider "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme."  Maraia v. Orange Regional Medical Center, 63 A.D.3d 1113, 1116, 882 N.Y.S.2d 287, 289-90 (2d Dep't 2009) (internal quotation marks ommitted).  The third factor is the most important inquiry. Id., 882 N.Y.S.2d at 290 (citing Brian Hoxie's Painting Co. v. Cato-Meridian Central School District, 76 N.Y.2d 207, 212, 557 N.Y.S.2d 280, 282 (1990)).  The only court to pass on this precise issue held that NYLL § 206-c does not create a private right of action.  Kratzert v. White Lodging Services, Inc., No. 1-09-CV-597,

16

2010 WL 883677, at *1 (N.D.N.Y. March 8, 2010).   In a spare opinion, the court found that to imply a private right of action would be inconsistent with the legislative scheme, as "the legislative goal was to improve workplace conditions generally and not to establish a vehicle for the compensation of particular individuals."   Id.

However, the Court here does not need to reach this issue as it presents an unsettled question of state law. (Def. Memo. at 9). Concerns of "comity [are] especially implicated when state law has not been definitively interpreted by the state courts." Chenensky, 942 F. Supp. 2d at 395; see also Bray v. City of New York, 356 F. Supp. 2d 277, 283-84 (S.D.N.Y. 2004) (claims presenting "novel questions of state and local law [] militate strongly against exercising supplemental jurisdiction"). Given that no New York state court has yet addressed this issue, it is appropriate to decline to exercise supplemental jurisdiction over Ms. DeMicco's NYLL claim.

Conclusion

For the foregoing reasons, I recommend that the plaintiff-intervenors' motion to intervene (Docket no. 21) be granted in part and denied in part.   The plaintiff-intervenors should be permitted to bring claims against the defendant under Title VII, the NYHRL, and the NYCHRL, but not under 29 U.S.C. § 207(r) and NYLL § 206-c.

17

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable J. Paul Oetken, Room 2101, 40 Foley Square, New York, New York, 10007 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 4, 2014

Copies mailed this date:

Thomas Lepak, Esq.
Elizabeth A. Grossman, Esq.
Nora E. Curtin, Esq.
U.S. Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004

Barbara A. Gross, Esq.
Jean L. Schmidt, Esq.
Joshua S. Hurwit, Esq.
Littler Mendelson, P.C.
900 Third Avenue
7th Floor
New York, NY 10022

Michelle A. Caiola, Esq.
Legal Momentum
5 Hanover Square
New York, NY 10004